# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

**CIVIL ACTION NO. 09-396-JBC**

**RUBY ANN HENSLEY,**                                           **PLAINTIFF,**

**V.**               **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                  **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the parties' cross-motions for summary judgment. For the reasons discussed below, the court will grant the defendant's motion (R. 6) and deny the plaintiff's motion (R. 7).

1. **The ALJ's Determination**

The claimant in this case is Ruby Hensley, who alleges that she became disabled in May of 2006. At the time of the alleged onset of her disability, she was twenty-nine years old. Hensley has a tenth-grade education and has past work experience as an office clerk at a coal mine. She applied for disability insurance benefits ("DIB") (AR 98-102) and supplemental security income ("SSI") (AR 91-97) on July 10, 2007, alleging disability due to back problems, bulging discs, and acid reflux. Her claims were initially denied on November 14, 2007 (AR 70-73), and upon reconsideration on February 4, 2008 (AR 76-81). After a hearing, Administrative Law Judge ("ALJ") Frank Letchworth issued a decision denying

1

benefits on March 17, 2009.

To determine whether a claimant is disabled within the meaning of the Social Security Act, ALJs employ a five-step inquiry outlined in 20 C.F.R. § 404.1520. At Step 1, the ALJ here found that Hensley had not engaged in substantial gainful activity since May 16, 2007, the alleged onset date of her disability.  AR 13.  At Step 2, the ALJ found that Hensley's history of low back pain was a severe impairment according to 20 C.F.R. §§ 404.1521 *et seq.* and 416.921 *et seq*.  AR 13-14.  At Step 3 the ALJ determined that Hensley's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14.  Considering her impairments, the ALJ determined that Hensley had the residual functional capacity (RFC) to perform medium work, with some environmental and postural limitations (AR 14-15), and determined at Step 4 that Hensley was capable of performing her past relevant work (AR 14-16).  Thus, the ALJ found that Hensley was not disabled and denied her claims for SSI and DIB.  AR 8-16.  Hensley appealed the decision (AR 4-7), but the Appeals Council denied her request for review on September 24, 2009 (AR 1-3).  Following that denial, Hensley filed this action.

**II. Legal Analysis**

Hensley challenges the ALJ's decision on two grounds. First, she argues that the ALJ did not properly weigh the opinion of her treating physician, Dr. Talmadge Hays.  Second, Hensley asserts that the ALJ erred in evaluating her credibility

regarding the extent and severity of her pain and limitations. Hensley's arguments are without merit. Because the ALJ properly justified his decision to give greater weight to the testimony of several non-treating physicians, and because he also explained his reasons for finding the claimant's testimony not to be credible, the claimant's motion for summary judgment must be denied, and the Commissioner's must be granted. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

  A. The ALJ Gave a Sufficient Explanation for Not Giving Controlling Weight to Dr. Hays's Opinions.

Hensley's first argument for overturning the decision of the ALJ is that he gave insufficient weight to the opinions of her treating physician, Dr. Hays. This argument fails. Although the opinions of treating physicians are generally given greater weight than those of non-treating physicians, the ALJ gave a sufficient justification for deviating from this standard practice.

Dr. Hays had treated Hensley for approximately sixteen years and thus witnessed her both before and after her alleged disability. On December 5, 2008, he completed a Medical Assessment of Ability to do Work-Related Activities (Physical) form on which he indicated that Hensley's physical capabilities were substantially affected by her impairments. For example, Dr. Hays opined that Hensley could only lift five pounds occasionally, stand or walk fifteen minutes in an eight-hour workday, and sit one to two hours in a day. AR 229-31. Around this

same time, Dr. Hays drafted a letter in which he expressed his belief that Hensley was completely disabled.

Doctors who are able to provide such longitudinal snapshots of a patient's impairments are usually given great weight in assessing disability. *See* 20 C.F.R. § 404.1527. Indeed, if such a physician's opinion is well-supported, it is generally entitled to controlling weight. While an ALJ is not obligated to follow the opinions of such physicians, he must provide "some basis" for rejecting them. *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987). An ALJ "is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary. Such opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284 (6th Cir. 1994) (citations omitted). Further, an ALJ is never bound by broad, conclusory statements from treating physicians that a patient is or is not disabled. *See Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984); *West v. Com'r Social Sec. Admin.*, 240 F. App'x 692 ("We have repeatedly rejected such conclusory statements from treating physicians.").

Here, the ALJ gave a sufficient explanation for his decision to give the opinions of Dr. Hays minimal weight. He stated that Dr. Hays's RFC finding was "overly restrictive considering claimant's daily activities and 'underly' supported clinically." The ALJ then contrasted Dr. Hays's finding with that of Dr. Burchett, the consultative examiner, and Dr. El-Kalliny, the specialist. According to the ALJ,

4

"I find the generally benign findings of consultative examiner, which are supported by independent examiner neurosurgeon Dr. El-Kalliny, merit as much or more weight as Hays' does."

The decision to give Dr. Hays's opinions less weight was supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527 (d)(3), 416.927 (d)(3) (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given that opinion). None of the three diagnostic tests of Hensley's back since she allegedly suffered a disabling fall in May of 2006 support Dr. Hays's severe restrictions. A June 2006 x-ray of Hensley's lumbar spine showed all discs were normal, but for a slight narrowing of the disc space at L4-L5. AR 159. A June 2007 MRI similarly revealed only "L4-5 central disc displacement with annular rent" and "mild" other findings, including degenerative disc disease. AR 181-82. Finally, the results of a January 2009 MRI, during an episode when Hensley's back had allegedly "locked up," revealed "[d]ominant finding is *mild* degenerative disc disease at the L4-5 level with a *shallow* central protrusion and *mild* facet arthropathy with capsulosynovitis resulting in indentation of the thecal sac, *borderline mild* central canal stenosis with abutment of the descending right L5 nerve root." AR 246 (emphasis added).

These findings of, at most, "mild" physical conditions are supported elsewhere in the record. Dr. Barry Burchett completed a comprehensive physical

5

examination of Hensley on October 31, 2007. This examination revealed no significant abnormalities. Dr. Burchett concluded only that Hensley had chronic low back pain. AR 184-87. Dr. Burchett observed that Hensley's "range of motion of the spine is normal," that there was "no evidence of compressive neuropathy in the lower extremities," and that Hensley "seemed comfortable while standing, seated, and supine." AR 187. Although Dr. Burchett's examination occurred in 2007, his finding were confirmed by later examinations.

In 2009, Hensley received a second MRI. The physician who read this second MRI concluded that she had only "mild" degenerative disc disease at the L4-L5 level with a shallow" protrusion and "mild" facer arthropathy resulting in indentation of the thecal sac, and "borderline mild" central canal stenosis with abutment of the descending right L5 nerve root. The results of this MRI (i.e., that Hensley had, at most, conditions of mild intensity) confirm Dr. Burchett's earlier findings.

The most recent examination of Hensley was done by Dr. Magdy El-Kalliny, a neurosurgeon who examined Hensley in January 2009 after a referral from Dr. Hays. Dr. El-Kalliny found that there was no herniation in her back, that her motor system had "normal bilateral lower extremities" and "5/5 muscle strength," that her gait and station were normal, and that she had good strength in her legs. These findings stand in contrast to the much more severe diagnoses offered by Dr. Hays.

Near the time that Dr. Hays completed his physical RFC evaluation, he also wrote a letter giving his opinion that Hensley was "totally disabled at the present time" due to a herniated disc in her lower back. He went on to say that "this patient is totally incapacitated as a result of her lumbar disc disease and she is not able to perform any of the work activities that are described in the [RFC] questionnaire." *Id*. Although this letter is not discussed in the ALJ's written decision, it was discussed at the hearing. AR. 20. Further, the letter itself is not entitled to significant weight because it is not a specific, medically supported opinion. *See West,* 240 F. App'x at 696. It is largely a portrait of Hensley's emotional fortitude, and to the extent it actually discusses her physical conditions, there is little to no clinical support offered. *See Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).

The ALJ's decision to give reduced weight to the opinion of Hensley's treating physician was proper. Given the contrast between the diagnoses of Drs. Burchett and El-Kalliny and Dr. Hays's findings, as well as the objective results of her two MRIs, there was ample justification for the ALJ's decision. As discussed earlier, such a decision need only be supported by substantial evidence. Here, there was such evidence.

> B. The ALJ Did Not Err In Evaluating Hensley's Testimony Regarding Her Pain Symptoms and Limitations.

7

The ALJ considered Hensley's complaints of all of her symptoms and adequately explained why he did not find her totally credible. This court accords great deference to the ALJ's assessment of a claimant's credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). While Hensley bears the burden of establishing that she is disabled, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993), her own testimony is but one of many pieces of evidence that an ALJ must consider in making a disability determination. 42 U.S.C. § 423(d)(5)(A) (setting forth that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . there must be medical signs and findings").

The ALJ evaluated Hensley's credibility in accordance with SSA regulations. As discussed above, the ALJ first found that there were medical signs and findings showing Hensley's history of lower back pain, which "could reasonably be expected to cause the alleged symptoms." AR 14-15. 20 C.F.R. § 404.1529(b). Then the ALJ determined that the objective medical evidence did not confirm the severity of Hensley's alleged pain arising from her back condition and that Hensley's condition could not reasonably be expected to produce disabling pain. *Id*. *See* 20 C.F.R. §§ 404.1529(c) (1)–(4) (listing factors relevant to symptoms, such as pain; daily activities; location, duration, frequency, and intensity of pain or other symptoms; type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, for relief of pain or other symptoms; and any

measures used to relieve pain or other symptoms). Her complaints appeared to be in "excess of actual physiological damage." AR 15. The comprehensive findings of Drs. Burchett and El-Kalliny were "benign," and as the ALJ pointed out, Hensley's most recent MRI showed only "borderline mild" stenosis at L4-5 and negative at L5-S1 level. *Id*. Hensley's admission that her leg pain "varies . . . appears to support [Dr. Burchett's] assessment of no neuropathy or radiculopathy due to nerve compression." *Id*.

Hensley's complaints of disabling pain and symptoms were also inconsistent with her daily activities. *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain."). Although Hensley alleged that she lies down a couple of hours a day most days, and "most of the day" when her back goes out (AR 41), the ALJ pointed out that she is divorced and lives with her two children whom she drives to the bus stop every day (AR 15). Hensley admitted that she was able to drive thirty minutes each way to see Dr. Burchett[1] and visits her father who lives at least that far away (AR 29-30), but testified that she could sit for only about fifteen or twenty minutes before she was stiff and hurting (AR 40).

---

[1] The ALJ incorrectly stated that Hensley "drives about 30 minutes each way to see treating physician Hays." AR 15. Hensley testified that Dr. Hays's office is only a couple of miles away, but that it took her thirty minutes to drive to Dr. Burchett's office. AR 29. This minor inconsistency, however, is insufficient to overturn the ALJ's decision.

The ALJ's determination that Hensley was not fully credible is supported by substantial evidence. *See Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978). The ALJ took into account Hensley's self-reported activities, which conflicted with her claims of disabling pain, and properly determined that Hensley's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they were inconsistent with the other medical evidence presented." AR 15. He did, however, "add[] a 30 minute sit/stand option to reasonably accommodate her testimony." *Id*.

As stated earlier, determinations of credibility are for the ALJ, who is in a better position to assess such matters. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Here, the ALJ fully explained his basis for believing Hensley's own descriptions of her pain and limitations to be not fully credible. *Collins v. Commissioner of Social Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009).

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that Hensley's motion for summary judgment (R. 6) is **DENIED** and the Commissioner's motion for summary judgment (R. 7) is **GRANTED**.

Signed on February 14, 2011 

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY